**ALLSTATE INSURANCE COMPANY, Plaintiff,**

v.

**ADMINISTRATIA ASIGURARILOR De STAT, et al., Defendants.**

No. 86 Civ. 2365 (DNE).

United States District Court, S.D. New York.

Jan. 19, 1995.

Michael Luskin, Gelberg & Adams, New York City, for Allstate Ins. Co.

Bernard Hubscher, Bernard Hubscher, New York City, for Allami Biztosito, Ceska Statni Pojistovna, Pozavarovalna Skupnost Sava.

Larry W. Thomas, Cameron, Hornbostel, Adelman & Butterman, New York City, for Caja National de Ahorro y Seguros, Grupo Universal De Reaseguros Corrientes, Instituto Nacional De Reaseguros.

Harry P. Cohen, Rosenman & Colin, New York City, for Groupe Kleber.

Roy E. Pomerantz, Kroll & Tract, Newark, NJ, for Administratia Asigurarilor De Stat Strada.

Thomas S. Howard, Kirsch, Gartenberg & Howard, Hackensack, NJ, for Societe Centrale De Reassurance.

Roy E. Pomerantz, Kroll, Tract, Harnett, Pomerantz & Cameron, New York City, for Administratia Asigurarilor De Stat Strada.

Martin E. Karlinsky, Scheffler Karlinsky & Stein, New York City, for Raymond Karlinsky, Maurice Newman.

### OPINION & ORDER

EDELSTEIN, District Judge:

This action arises out of a series of insurance transactions involving Allstate Insurance Company ("Allstate" or "plaintiff") and defendants, thirty-three reinsurance companies.[1] Pursuant to New York Insurance Law section 1213(c)(1), Allstate contends that each defendant must post a pre-filing security in an amount sufficient to cover Allstate's claim against that defendant. In addition, Allstate and defendant Societe Centrale de Reassurance ("SCR") move for leave to amend their respective pleadings.

Before proceeding to the facts of this case, it is helpful to review a few relevant insurance terms. "Reinsurance" is a form of insurance provided by one insurance company, "the reinsurer," to another insurance company, "the reinsured." *See* Reinsurance 661–62 (Robert W. Strain ed. 1980). The goal of reinsurance is to indemnify the reinsured for

---

1. Defendants are Aseguradora Mundail, S.A.; Aseguradora Mundial de Panama, S.A.; Banco de Seguros del Estado; Allami Biztosito; Caisse Nationale de Reassurance; Caja Nacional de Ahorro y Seguro; Ceska Statni Pojistovna; Pozavarovalna Skupnost Sava; Compania Mercantil de Seguros y Reaseguros, S.A.; Universal Guarantee Insurance Co. of Auckland; Eastern General Reinsurance Corp.; Eastern Marine and Fire Insurance Co. Ltd.; First Fire and Marine Insurance Co. Ltd.; Societe D'Assurance Syrienne; Groupe Kleber; Grupo Universal de Reaseguros; Halvanon Insurance Co. Ltd.; Administratia Asigurarilor de Stat; Instituto Nacional de Reaseguros; International Fire and Marine Ins. Co. Ltd.; Societe Centrale de Reassurance; Korean Reinsurance Corp.; Reaseguradora Al-

batros; Kuwait Insurouse; Seguros la Territorial, S.A.; Milli Reassurans, R.C.D.; Milli Reassurans, T.A.S.; Mutuelle Centrale Marocaine D'Assurance; P.T. Asuransi Antar Malayan Bali; P.T. Asuransi Kredit Indonesia; P.T. Reasuransi Umum Indonesia; Pan Korea Insurance Co.; and Phillipine Reinsurance Corp. Administratia Asigurarilor de Stat is a third-party plaintiff. Third-party defendants are Promotora de Occidente, S.A.; Promotora de Occidente (New York) Ltd.; C.J.V. Associates, Inc. of New York; Raymond Karlinsky; Samuel Neulinger; Maurice Newman; and Myron Patt. The claims against former defendants Seguros Progreso, S.A., and Kuwait Insurance Co., S.A.K., were voluntarily dismissed. *See* Order dated March 2, 1987; Stipulation and Order dated November 17, 1988.

losses it sustains under insurance policies that the reinsured has issued to the general public. *See id.* at 6–7. Similarly, a "retrocession" is a form of reinsurance provided by one reinsurance company, "the retrocessionaire," to another reinsurance company, "the retrocedent." *See id.* at 662. The goal of a retrocession is to indemnify the retrocedent for losses that the retrocedent sustains under the reinsurance policies that it has issued to insurance companies. *See id.* at 587–88.

Allstate alleges that its former wholly owned subsidiary, Northbrook Excess and Surplus Insurance Company ("NESCO"), entered into four reinsurance contracts with a Mexican reinsurer, Seguros La Republica ("SLR"). SLR, in turn, entered into retrocession agreements with defendants, whereby defendants agreed to reinsure SLR's reinsurance of NESCO. Under SLR's retrocessions with defendants, each retrocessionaire agreed to reinsure a portion of SLR's risks. Accordingly, defendants were to indemnify SLR for SLR's loses under the NESCO reinsurance contracts, and each defendant would receive a portion of the premiums that SLR received from NESCO.

Allstate alleges that between 1976 and 1980, NESCO paid approximately $9,770,000 in premiums to SLR. Plaintiff alleges that, during this time, NESCO paid less than $600,000 in claims on the insurance policies that SLR had agreed to reinsure. In 1980, however, when the volume of claims increased, SLR stopped making the payments to NESCO that were mandated by the reinsurance agreements between NESCO and SLR.

Thereafter, plaintiff alleges that NESCO contacted SLR, seeking payment of the sums that SLR owed NESCO under their reinsurance contracts. At this time, SLR informed NESCO that SLR had retroceded a percentage of the NESCO reinsurance treaties to defendants. Allstate alleges that SLR told NESCO that, under the retrocession agreements between SLR and defendants, each defendant was responsible to SLR for a percentage of NESCO's reinsurance claims. SLR claimed that it did not have sufficient funds to satisfy its obligations to NESCO because SLR had not received payments from defendant-retrocessionaires, as specified in the retrocession agreements.

In 1985, NESCO merged into Allstate. After this merger, Allstate and SLR entered an agreement under which SLR paid to Allstate a portion of the money that SLR owed to NESCO. Further, as part of this agreement, SLR assigned to Allstate all of SLR's rights against defendant-retrocessionaires.

Allstate brings suit against defendants and alleges three causes of action. First, Allstate contends that, as SLR's assignee, Allstate is entitled to sue defendants based on the retrocession agreements between SLR and defendants. Second, Allstate contends that defendants and NESCO had an implied contract. Allstate contends that, as NESCO's successor-in-interest, it is entitled to recover on that implied contract. Third, Allstate brings a claim for unjust enrichment.

Three motions are currently before this Court. Allstate moves to compel defendants to post pre-filing security as required by New York Insurance Law section 1213(c)(1), which states in pertinent part:

Before any unauthorized foreign or alien insurer files any pleading in any proceeding against it, it shall either:

(A) deposit with the clerk of the court in which the proceeding is pending, cash or securities or file with such clerk a bond with good and sufficient sureties, to be approved by the court, in an amount to be fixed by the court sufficient to secure payment of any final judgment which may be rendered in the proceeding.... [2]

**2.** The statute further states:
   but the court may in its discretion make an order dispensing with such deposit or bond if the [superintendent of insurance of this state] certifies to it that such insurer maintains within this state funds or securities in trust or otherwise sufficient and available to satisfy any final judgment which may be entered in the proceeding, or

   (B) procure a license to do an insurance business in this state.
None of the defendants contends that the superintendent of insurance has issued the appropriate certificate, and none contends that it has procured a license to do an insurance business in this state. Thus, these provisions of the statute are irrelevant to the case at hand.

Allstate also moves for leave to amend its complaint because Allstate alleges that one of the defendant-corporations has been restructured and now exists as three separate companies. Allstate seeks to amend its complaint to name each of these three companies as a defendant. In addition, defendant SCR cross-moves for leave to amend its answer to include the affirmative defense of set-off.

For the reasons discussed below, Allstate's motion for pre-filing security is denied. Allstate's motion for leave to amend its complaint and SCR's motion for leave to amend its answer are granted.

### PRE-FILING SECURITY

Allstate contends that defendants must comply with section 1213(c)(1)'s pre-filing security requirement because defendants are all "unauthorized foreign or alien insurers." None of the defendants contests Allstate's claim that it is an unauthorized foreign or alien insurer.

Each defendant argues that because Allstate brings this action based solely on rights that Allstate acquired from companies that were not New York residents, Allstate is not entitled to section 1213(c)(1)'s protection. It is undisputed that neither NESCO nor SLR was a resident of New York.[3] Defendants argue that section 1213(c)(1) only protects New York residents. Thus, they contend that, because Allstate brings this suit based on rights that it acquired either as NESCO's successor-in-interest or as SLR's assignee, Allstate cannot invoke the protection of section 1213(c)(1).

■ Because subject-matter jurisdiction in the instant case is based on diversity of citizenship, New York law governs this action. New York Insurance Law section 1213 was enacted to aid New York residents who are insured by foreign insurance companies that are not authorized to do an insurance business in New York. The statute's stated purpose is:

> to subject certain insurers to the jurisdiction of the courts of this state in suits by or on behalf of insureds or beneficiaries under certain insurance contracts. The legislature declares that it is a subject of concern that many *residents of this state* hold policies of insurance issued or delivered in this state by insurers while not authorized to do business in this state, thus presenting to *such residents* the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies.

N.Y. Ins. L. § 1213(a) (McKinney 1985) (emphasis added). To further this goal, section 1213 provides for long-arm jurisdiction over these foreign insurers. *See* N.Y. Ins. L. § 1213(b)(2). This section also provides that an unauthorized foreign insurer who conducts an insurance business in New York appoints the New York superintendent of insurance as its agent for service of process. *See id.* In appropriate circumstances, section 1213(c)(1) requires the unauthorized foreign insurer to deposit a pre-filing security with the clerk of the court.

Although few courts have addressed a case on point, the Appellate Division of the New York Supreme Court examined an argument, based on the statutory predecessor to section 1213, that is similar to the argument that defendants raise in the instant case. *See Food Fair Stores v. General Excess Ins. Co., Ltd.,* 21 A.D.2d 684, 250 N.Y.S.2d 458 (2d Dep't 1964). In *Food Fair,* plaintiff, a New York corporation, brought suit against an insurance company that was not authorized to do business in New York. *See id.* 250 N.Y.S.2d at 459. In this suit, plaintiff sought to employ the substituted-service provision of former section 59–a of the New York Insurance Law, which was the statutory predeces-

---

3. *See* Memorandum of Law in Opposition to the Plaintiff's Motion to Compel Pre-filing Security on Behalf of Defendants Banco de Seguros del Estado, Caja Nacional de Ahorro y Seguro, Grupo Universal de Reaseguros S.A., and Instituto Nacional de Reaseguros at 38–39 ("Neither NESCO nor SLR was ever authorized to do business in New York or licensed to do an insurance business in New York."); Reply Brief on Behalf of Allstate Insurance Company in Support of Its Motion to Compel Pre-filing Security and Amend Its Complaint at 5–10 (responding to defendants argument that Allstate is not entitled to invoke section 1213's protections because neither NESCO nor SLR was a New York resident, and failing to challenge the assertion that neither NESCO nor SLR was a New York resident).

sor of section 1213. Plaintiff sued "as the assignee of a Pennsylvania corporation," and there was "no contention that plaintiff's assignor was authorized to do business in New York." *Id.* The Court held that former section 59–a "was not intended to protect either persons who were not residents of this state or corporations which were not authorized to do business here." *Id.* (citations omitted). The Court further held that plaintiff was not entitled to invoke former section 59–a's protection because this statute "was not intended to protect a domestic corporation which brought suit as the assignee of a foreign corporation which was not authorized to do business here." *Id.* at 460 (citations omitted).

■ The holding in *Food Fair* is controlling in the instant case. Like the plaintiff in *Food Fair*, Allstate is a New York corporation that brings suit based on rights that Allstate acquired from corporations that were not authorized to do business in New York. Allstate brings suit as the assignee of SLR and as the successor-in-interest to NESCO, and it is undisputed that neither SLR nor NESCO was ever authorized to do business in New York. Thus, neither NESCO nor SLR falls within the class of persons protected by section 1213, which the legislature enacted to protect New York residents. *See* N.Y. Ins. L. § 1213(a). Accordingly, Allstate is not entitled to protection under section 1213(c)(1).

While *Food Fair* was decided based on former section 59–a, logic requires that the same rule be applied in cases involving section 1213. Section 1213 is the statutory successor to section 59–a and is similar to its predecessor. In particular, section 1213 and former section 59–a contain identical purpose clauses. *Compare Clifton Prods., Inc. v. American Univ. Ins. Co.,* 169 F.Supp. 842, 844 (S.D.N.Y.1959) (quoting the purpose clause of former section 59–a) *with* N.Y. Ins. L. 1213(a) (purpose clause of current stat-

ute). In both purpose clauses, the legislature made it clear that each statute was enacted to aid New York residents who bring suit against unauthorized foreign insurance companies. The basis for the *Food Fair* court's holding is that section 59–a's purpose clause indicates that the legislature did not intend the benefits of this statute to apply to non-residents. Because section 1213 contains an identical purpose clause, it is clear that section 1213 is also not intended to protect non-residents.[4]

■ Moreover, the conclusion that an assignee or successor-in-interest of a non-resident has no rights under section 1213 is consistent with the fundamental rule of contract law that "an assignee never stands in any better position than his assignor." *International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.,* 36 N.Y.2d 121, 126, 325 N.E.2d 137, 139, 365 N.Y.S.2d 808, 811 (1975); *see also American Book Co. v. Yeshiva Univ. Dev. Found., Inc.,* 59 Misc.2d 31, 297 N.Y.S.2d 156, 163 (Sup.Ct.1969) ("the successor in interest to the prior owners stepped into their shoes, acquiring no greater rights than its predecessors") (citations omitted). As the New York Court of Appeals stated, an assignee "is subject to all the equities and burdens which attach to the property assigned because he receives no more and can do no more than this assignor." *Id.* (citations omitted). In the instant case, Allstate brings suit against defendants based on rights that Allstate acquired as NESCO's successor-in-interest and as SLR's assignee. However, neither NESCO nor SLR would be entitled to claim the protection of section 1213(c)(1) because this section "protects only New York residents." *Clifton,* 169 F.Supp. at 845 (discussing former section 59–a). Neither NESCO nor SLR was a New York resident. Because Allstate stands in the shoes of its assignor and in the shoes of its predecessor-in-interest, and because neither its assignor nor its predecessor-in-interest

---

4. In addition, the *Food Fair* holding applies in the instant case, even though the *Food Fair* court addressed former section 59–a's service-of-process provision, while the instant case concerns section 1213's pre-filing-security provision. Based on former section 59–a's purpose clause, the *Food Fair* court held that non-residents could

not invoke any of the protections of that statute. Because section 1213 contains an identical purpose clause, under the *Food Fair* rule, non-residents cannot claim the protection of any of section 1213's provisions, including the pre-filing-security provision.

qualifies for protection under section 1213, Allstate does not qualify for protection under this statute.

Allstate raises three arguments in support of its assertion that it is entitled to protection under section 1213(c)(1). Each of these arguments is examined in turn.

First, Allstate claims that the *Food Fair* decision establishes Allstate's right to invoke section 1213's protections. Allstate claims that one sentence in *Food Fair* demonstrates that Allstate falls within the class of persons to be protected by section 1213. That sentence states:

> We shall assume that in some instances, where a foreign insurer is engaged solely in the business of reinsurance and reinsures insurers which insure New York residents, constructive service of process may be resorted to by the original insured, pursuant to section 59–a of the Insurance Law.

*Food Fair,* 250 N.Y.S.2d at 459 (citation omitted). Allstate contends that it is an insured New York resident,[5] SLR is a company that insured Allstate, and defendants are reinsurance companies that reinsured SLR. As a result, Allstate claims to be entitled to section 1213's protection, including the right to require defendants to post pre-filing security.

Allstate's argument is flawed, however, because Allstate has taken the above-quoted sentence out of context. When this sentence is read in conjunction with the three sentences that follow it, it becomes clear that the *Food Fair* decision contradicts Allstate's argument. These sentences read:

> But here the plaintiff, a New York corporation, is suing as the assignee of a Pennsylvania corporation, and there is no contention that plaintiff's assignor was authorized to do business in New York.
>
> In our opinion, section 59–a of the Insurance Law was not intended to protect either persons who were not residents of this state or corporations which were not authorized to do business here when the insurance contracts were executed and the liabilities or losses were incurred. [citations omitted] It was not intended to protect a domestic corporation which brought suit as the assignee of a foreign corporation which was not authorized to do business here. [citation omitted].

*Food Fair,* 250 N.Y.S.2d at 459–60.

■ These three sentences are controlling in the instant case. Here Allstate, "a New York Corporation, is suing as the assignee of" SLR, a Mexican Corporation, "and there is no contention that plaintiff's assignor was authorized to do business in New York." *Id.* at 459. Further, as the *Food Fair* court recognized, New York Insurance law "was not intended to protect a domestic corporation [that] brought suit as the assignee of a foreign corporation [that] was not authorized to do business here." *Id.* at 460 (citations omitted). Thus, because Allstate is suing as SLR's assignee, Allstate is not entitled to section 1213's protections.[6]

---

5. Allstate alleges that, with respect to its express-contract claim, Allstate is not suing as NESCO's successor-in-interest. Rather, Allstate claims that it was a named party in the reinsurance contracts between NESCO and SLR. Thus, Allstate claims to be an "insured" under the contracts between NESCO and SLR. Defendants contest Allstate's claim, arguing that Allstate never was a party to the reinsurance contracts between NESCO and SLR.

This Court need not resolve this dispute because, even assuming that Allstate was a party to the reinsurance contracts between NESCO and SLR, Allstate is not entitled to invoke section 1213.

6. When the sentence that Allstate quotes is read in conjunction with the three sentences that follow it, it becomes clear that the *Food Fair* court merely wished to make clear that "in some in-

stances" an insured New York resident could bring suit against a foreign reinsurance company. The *Food Fair* court contemplated that such a case might occur where a foreign reinsurance company reinsures a New York company that insures a New York resident. In such a case, if the New York insurance company assigned its rights against the foreign reinsurer to the New York insured, the New York insured would be able to invoke the protections of New York's insurance laws because he would be stepping into the shoes of another New York resident.

However, like the plaintiff in *Food Fair,* Allstate brings suit as the assignee of a foreign corporation. Because *Food Fair* stands for the proposition that "a domestic corporation [that] brought suit as the assignee of a foreign corporation" cannot invoke former section 59–a's protection, *Food Fair* clearly contradicts Allstate's contention.

Second, Allstate argues that it is entitled to invoke section 1213(c)(1) because the actions of NESCO and defendants created an implied contract. As NESCO's successor-in-interest, Allstate seeks to invoke section 1213's protections.

■ Because NESCO was not a resident of New York, however, Allstate's argument is meritless. As previously discussed, section 1213 only protects New York residents. *Food Fair*, 250 N.Y.S.2d at 459–60; *see also Clifton*, 169 F.Supp. at 845. Furthermore, there is no difference between a New York resident that sues as the assignee of a foreign corporation and a New York resident that sues as the successor-in-interest to a foreign corporation. *Compare American Book*, 297 N.Y.S.2d at 163 (successor-in-interest stands in shoes of predecessor-in-interest) *with Fallon v. Wall St. Clearing Co.*, 182 A.D.2d 245, 586 N.Y.S.2d 953, 956 (1st Dep't 1992) ("the assignee steps into the shoes of its assignor"). In each case, the foreign corporation could not invoke section 1213's protections, and the New York corporation only possesses those rights that the foreign corporation possessed. Here, defendants have asserted that NESCO was a foreign corporation that was not authorized to do business in New York, and Allstate has not challenged this assertion.[7] Further, both Allstate's motion papers and its complaint establish that NESCO and defendants were

the only parties to the alleged implied contract.[8] Therefore, as NESCO's successor-in-interest, Allstate is unable to invoke statutory protections that NESCO could not invoke. Because NESCO, as a foreign corporation, was not entitled to section 1213(c)(1)'s protection, Allstate cannot invoke this section.

■ Third, Allstate asserts that it is entitled to invoke section 1213(c)(1)'s pre-filing security requirement because Allstate is a beneficiary of the retrocession agreements between SLR and defendants. Allstate correctly notes that section 1213's protections can be invoked by a New York resident that is the beneficiary of an insurance policy issued by an unauthorized foreign insurer. *See* N.Y. Ins. L. § 1213(a).

■ However, under New York law, an insured is not a beneficiary of a contract between an insurance company and a reinsurance company. *See Morgan v. American Risk Management, Inc.*, No. 89 Civ. 2999, 1990 WL 106837, at *9 (S.D.N.Y. July 20, 1990) ("the insured is not considered a third-party beneficiary of the reinsurance treaty, and cannot recover against the reinsurer, even if the insurer becomes insolvent") (citations omitted) (applying New York law); *Skandia America Reinsurance Corp. v. Schenck*, 441 F.Supp. 715, 724 (S.D.N.Y.1977) (under New York law, insured is not a third party beneficiary of reinsurance contract).[9]

---

7. *See supra* note 3.

8. *See* Complaint, Second Count, ¶ 3 ("defendants engaged in a direct reinsurance relationship with NESCO by treating themselves as direct reinsurers"); Second Count, ¶ 4 ("This direct reinsurance relationship included, but was not limited to, direct accounting, direct payment of premiums, direct submission of claims and accounting data and direct communications as between NESCO and defendants through CJV/POSA on the NESCO reinsurance business."); Second Count, ¶ 5 ("CJV/POSA conducted and carried out this direct reinsurance relationship with NESCO on behalf of defendants with the knowledge, consent, acquiescence and active participation of defendants."); Second Count, ¶ 6 ("By their own acts and conduct and that of their agent CJV/POSA, the ... defendants treated themselves as direct reinsurers of NESCO...."); Second Count, ¶ 8 ("Defendants have breached their contractual relationships with NESCO by failing to pay their percentage participation of claims due on the NESCO risks"); Allstate's Re-

ply Brief at 7 (quoting Allstate's Complaint, Second Count, ¶ 4).

9. *See also Unigard Sec. Ins. Co., Inc. v. North River Ins. Co.*, 4 F.3d 1049, 1054 (2d Cir.1993) ("The reinsurer is not directly liable to the original insured.") (citation omitted) (applying New York law); *Unigard Sec. Ins. Co., Inc. v. North River Ins. Co.*, 79 N.Y.2d 576, 582, 594 N.E.2d 571, 574 (1992) ("A reinsurance contract operates solely between the reinsurer and the ceding company. It confers no rights on the insured.") (citations omitted); In re *Liquidation of Union Indem. Ins. Co. of New York (Michigan National Bank–Oakland v. American Centennial Ins. Co.)*, 611 N.Y.S.2d 506, 511 (1st Dep't 1994) (insured "cannot claim the status of a third-party beneficiary of the reinsurance contract"); *Prince Carpentry, Inc. v. Cosmopolitan Mut. Ins. Co.*, 124 Misc.2d 919, 479 N.Y.S.2d 284, 293 (Sup.Ct. 1984) ("the insured is not considered a third party beneficiary of the reinsurance treaty") (citations omitted).

Although New York law recognizes an exception to this rule in cases in which there is "language in the policy indicating the reinsurer's intent to be directly liable to the insured," *Liquidation of Union Indemnity*, 611 N.Y.S.2d at 511, Allstate makes no claim that any of the policies issued by defendant-retrocessionaires contains such language. Rather, Allstate bases its entire argument on *Kaye v. Doe*, 204 Misc. 719, 125 N.Y.S.2d 135 (Sup.Ct.1953), and *Wolfman v. Modern Life Ins. Co.*, 352 Mass. 356, 225 N.E.2d 598 (1967). Yet, because neither of these cases even discusses whether an insured is a third party beneficiary of a contract between an insurer and a reinsurer, Allstate's argument is meritless. Because Allstate has entirely failed to demonstrate that it was a beneficiary of the contracts between SLR and defendants, Allstate is not entitled to invoke section 1213(c)'s pre-filing security provisions.

## MOTION FOR LEAVE TO AMEND COMPLAINT

Pursuant to the Federal Rules of Civil Procedure, Rule 15(a) ("Rule 15(a)"), Allstate moves for leave to amend its complaint. Allstate alleges that defendant Administratia Asigurarilor de Stat ("ADAS") has been restructured and now exists as three distinct entities, named Asigurarea Romaneasca S.A., Astra S.A., and Carom S.A. Allstate claims that it only learned about this restructuring recently and that, under this restructuring, these three entities have assumed ADAS's obligations to Allstate.

In opposition to Allstate's motion to amend, ADAS raises three arguments. First, ADAS claims that Carom A.S. is not an insurer. (ADAS's Memorandum at 28.) Second, ADAS claims that Asigurarea Romaneasca S.A. "is a successor only to ADAS's *domestic* insurance business." *Id.* Third, ADAS claims that a judgment from a court in Bucharest and an executive order of the Republic of Romania bar Allstate from asserting any claim against Astra S.A. *See id.* at 29.

Under Rule 15(a), leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The Supreme Court has instructed that "this man-

date is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The Court stated that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.; see also Bank of New York v. Sasson*, 786 F.Supp. 349, 352 (S.D.N.Y.1992) ("leave to amend should be denied if it appears that the movant can prove no set of facts in support of the proposed claims that would entitle him to relief"). In addition, the *Foman* Court specified a number of grounds that would justify denying a party's motion to amend its pleading; these grounds include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182, 83 S.Ct. at 230.

■ In the instant case, because the facts upon which Allstate relies may be a proper subject of relief, Allstate should be afforded an opportunity to test its claim by amending its complaint. Allstate alleges that ADAS is liable to Allstate based on a retrocession between SLR and ADAS. Further, Allstate contends that ADAS's liability has been assumed by Asigurarea Romaneasca S.A., Astra S.A., and Carom S.A. Thus, the facts that Allstate relies upon state a cause of action, and under Rule 15(a), Allstate should be permitted to amend its complaint.

■ ADAS's three arguments in opposition to Allstate's motion are without merit. All three of these arguments address the merits of Allstate's claim, and arguments that address the merits are not relevant to a motion for leave to amend the pleadings. *See Grogg v. General Motors Corp.*, 72 F.R.D. 523, 527 (S.D.N.Y.1976); *see also Silberblatt, Inc. v. East Harlem Pilot Block Bld. 1 Housing Dev. Fund Co.*, 608 F.2d 28, 42–43 (2d Cir.1979). Further, ADAS has not asserted any of the grounds that the *Foman* Court stated would justify denying a motion for leave to amend the pleadings.

### CROSS–MOTION FOR LEAVE TO AMEND ANSWER

Defendant SCR cross-moves for leave to amend its answer to include the affirmative defense of set-off against Allstate. As previously discussed, leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). After reviewing SCR's argument, this Court finds that justice requires that SCR be permitted to amend its answer. Moreover, this Court has reviewed Allstate's objections to SCR's cross-motion, and this Court finds those objections to be without merit. Therefore, SCR's cross-motion for leave to amend its answer to include the affirmative defense of set-off is granted.

### CONCLUSION

IT IS HEREBY ORDERED that plaintiff's motion to compel defendants to post pre-filing security is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for leave to amend its complaint is GRANTED.

IT IS FURTHER ORDERED that defendant Societe Centrale de Reassurance's cross-motion for leave to amend its answer is GRANTED.

SO ORDERED.